| 19 | 331 |
| 134 | 509 |

## DONOHOE, Respondent, *vs.* VEAL, Appellant.

1. Under the revenue act of 1845 and the amendatory act of 1847, no title to land sold for taxes passes until a deed is executed by the register. The deed does not relate back to the sale.
2. The 4th section of the amendatory revenue act of March 12, 1849, only applies where the sale was made after its passage.

### *Appeal from Chariton Circuit Court.*

*Turner,* for appellant, among others, made the following points : 1. The act making the register's deed *prima facie* evidence of title is unconstitutional. If the legislature can make it *prima facie*, it can also make it *conclusive* evidence

of.title, and thus give the register absolute control over private property within the state. 2. If, however, the act is constitutional, a deed, to be *prima facie* evidence, must show, by recitals, that all the pre-requisites of the law have been complied with, which the deed, in this case, does not. 3. But if the deed be sufficient evidence of title in Thomas Donohoe, yet it is only evidence of title from its date, and *does not relate back* to the sale. *Alexander* v. *Merry*, 9 Mo. Rep. 514. *Hart* v. *Rector*, 13 ib. 497. The quit claim deed from Thomas Donohoe to the plaintiff did not pass the title subsequently acquired by the register's deed. *Bogy* v. *Shoab*, 13 Mo. Rep. 365. The plaintiff could at most only recover for trespasses committed after the date of the register's deed.

*A. Leonard*, for respondent. 1. The amendatory revenue act of February 13, 1847, making the register's deed *prima facie* evidence of title is, beyond all question, constitutional. 20 Ohio Rep. 561. *Vance* v. *Schuyler*, 1 Gill. (Ill.) Rep. 162. 1 Watts, 344. A sale for taxes and a lapse of two years, without redemption, are the jurisdictional *facts* that authorize the register to make a deed, and the deed itself is *prima facie* evidence of these facts. It is enough that there has been a sale *de facto*, and not necessary, in order to make out a *prima facie* title, that it should appear to have been rightfully conducted. 2. The deed related back to the sale, and vested the title in the purchaser from that time. This is so on common law principles; but in this case, there is a statute which so provides in effect. Amend. Rev. Act of 1849, §4.

GAMBLE, Judge, delivered the opinion of the court.

Donohoe filed his petition against Veal, to recover treble damages for alleged trespass on a tract of land claimed by Donohoe. The action was under the statute allowing the recovery of treble damages for certain descriptions of trespass.

On the trial, the plaintiff, in order to show his title to the land, gave in evidence a deed from the register of lands of the

state to Thomas Donohoe, dated February 10, 1851, in which it was recited that the state and county taxes on seven tracts of land described in the deed, amounting to eight dollars and thirty-six cents, including interest and incidental costs, remained due to the state and county; and that the register had, on the first Monday in June, 1848, advertised the land for sale to pay the taxes and penalties remaining due—the sale to take place on the first Monday in October, 1848; and the collector of the county on that day, before the court-house door of the county, exposed the land for sale, and did sell the same to Thomas Donohoe, for the taxes, interest and costs due thereon, he being the highest bidder for the same, for the sum of eight dollars and thirty-six cents; therefore the register conveyed the land in fee to said Thomas Donohoe. The plaintiff next gave in evidence a deed from Thomas Donohoe, for the land, conveying it by quit claim to the plaintiff, which was dated April 18, 1849. Objection was made to these deeds being admitted in evidence, but the objection was overruled, and they were read to the jury.

The evidence given by the plaintiff in relation to the trespass by the defendant, showed that trees were cut by him on the land after the date of the sale for taxes by the collector, and after the date of the deed from Thomas Donohoe to Stephen Donohoe, the present plaintiff, and before the execution of the deed by the register to Thomas Donohoe.

The Circuit Court, at the instance of the plaintiff, instructed the jury that, "if they found from the evidence, that the deeds read in evidence were executed and recorded as they profess, then they will find that the plaintiff was entitled to the land in the petition mentioned, from the 18th day of April, 1849; and if they find that defendant, at any time after that day, and before this suit was brought, cut down or carried away any timber or rails, on or from said land, they will find for plaintiff."

1. The date mentioned in this instruction is that of the deed from Thomas Donohoe to the plaintiff, and the principle assert-

ed is, that the plaintiff is entitled to maintain the action for trespasses committed by the defendant at any time after the conveyance made by Thomas Donohoe, although before the conveyance by the register. This position is attempted to be sustained in argument, on the ground that the register's deed made in February, 1851, has relation back to the sale made by the collector, in October, 1848, so as to vest the title to the land in Thomas Donohoe from the date of that sale, and transmit the title to the plaintiff from the date of the conveyance made to him from Thomas Donohoe. The doctrine of relation has been applied in this court, in cases of sheriff's deeds, made after the lapse of considerable time from the actual sale. *Crowley* v. *Wallace*, 12 Mo. Rep. 146. *Alexander et al.* v. *Merry*, 9 Mo. Rep. 524. The principle stated in those cases, and which is extracted from the old books is, "that, where there are divers acts concurrent, to make a conveyance, estate or thing, the original act shall be preferred, and to this the other acts shall have relation." The same rule has been applied to leases or deeds made in pursuance of an agreement, so as to make them relate to the date of the agreement. *Johnson* v. *Stagg*, 2 John. 510. So, an acknowledgment has been held to relate back to the execution of the conveyance. *Doe* v. *Dugan*, 8 Ham. 87. A confirmation by the first board of commissioners has been held to relate back to the time at which the claim was filed. *Landes et al.* v. *Brant*, 10 Howard, 372. The rule has been applied in a great variety of cases for the furtherance of justice, and it is not necessary to mention the different classes of cases in which it has been adopted.

It is attempted to apply the rule to a case in which a sale for taxes was made by the collector in October, 1848, and the deed of the register in February, 1851. What was the effect of the sale made by the collector, and what rights were acquired under it? The ninth section of the revenue act of 1845, (R. C. 950,) required the collector, when a sale was made of any land for taxes, to grant to the party purchasing a certificate therefor. The sections immediately following provided for

the redemption of the land so sold, at any time within two years ; and the seventeenth section directs that, upon a failure to redeem, the register should execute a deed for the land. The act of February 13, 1847, amends the act of 1845, in relation to the proceedings which precede the sale, and in the 29th section it directs, that the register shall execute deeds for lands which have been sold, and which have not been redeemed within two years after the sale. There is a difference between the clauses in the acts of 1845 and 1847, which relate to deeds executed by the register, in the effect such deeds are to have as evidence of title. In the act of 1845, (article 5, sec. 18, R. C. 952,) it is declared that such deed "shall be considered *prima facie* evidence of title in the purchaser, *upon his showing that the foregoing provisions of this article, which authorize the execution of such deed, have been complied with.*" The provision in the act of 1847 is : "such deed shall be *prima facie* evidence of title in fee simple in the purchaser for the taxes, to the land or town lots set forth in the same, *and the burthen of proving that the title is not in the person claiming to hold under the deed from the register, shall lie upon those claiming adversely to such deed.*" Section 30.

The two acts, while they differ, in putting the onus upon different parties, do not differ in the necessity of a compliance with all the requirements of law which are to be observed before the execution of the deed. The principle still remains untouched, that a person claiming to hold land under a sale for taxes, can only maintain his title when the law has been strictly pursued.

It is to be observed that, in neither of these acts is there any intimation that the deed is to afford any evidence of title in the purchaser, prior to its date. In the absence of any such provision, the deed can have no such effect, unless the previous proceedings contemplated the passing of the title to the purchaser before the time appointed for making the deed. If the law did not propose to give the purchaser the title to the land,

until two years should elapse from the time of the purchase, then it did mean that the title should remain in the owner for that period, and the right of the purchaser was, to receive his money, with a high penal interest, during the delay of redemption. It appears very clearly to be the design of these two acts, that the title to property sold for taxes shall remain undisturbed, until the deed is actually executed by the register; and that, until that act is performed, the title is in the former owner.

Such being the design of the acts, the doctrine of relation cannot be applied to such deed, to give it an effect and operation, contrary to the meaning of the law, by allowing the person claiming under it, to maintain, not only actions of trespass for injuries done after the sale, and before the conveyance by the register, but actions for the rents, issues and profits accruing during that period. The whole scheme of these acts very plainly shows that such a construction, or applying the fiction of relation to such a case, would be contrary to the intention of the legislature.

2. But it is said that the act of March 12, 1849, (Sess. Acts, 111,) recognizes the right of the purchaser of land sold for taxes, to take possession of the land immediately after the sale. The fourth section of the act provides that " the certificate of purchase, required to be given by the collector to the purchaser of land sold for taxes, according to the ninth section of the fifth article of the act of 1845, shall be *prima facie* evidence of title to the premises thus sold, until the time for the redemption of such lands shall have expired, and shall warrant the purchaser in taking possession of, and using the premises; but such purchaser shall not cut or carry away any timber on the land so purchased, until the expiration of the time for redemption." This provision is itself novel in our revenue laws, and can have no effect, where the sale was made before its passage. If the legal effect of the sale, when made under the previous law, was not such as to pass the title to the purchaser, this act could not change the nature of the transac-

tion, and give him the title. If the purchase made by Thomas Donohoe, at the collector's sale, in October, 1848, did not, according to the laws then in force, give him a title to the land, or a right to the possession, the act of 1849 could not confer upon him such title under his purchase. Nor is the act of 1849 to be understood as a legislative exposition of the former acts ; for the title which is evidenced by the certificate, is a title to the premises, warranting the possession and use of them, but such a title as is inconsistent with the right to cut and carry away the timber, which is, undoubtedly, a description of title that has its original conception in the act of 1849, and not in any previous acts.

The instruction of the court, which gave effect to the register's deed, as supporting the right of the plaintiff to recover for trespasses committed prior to its execution, was erroneous, and, as this appears to be a question that covers the case between the parties, it may not be necessary to touch upon other points presented in the argument.

The judgment of the Circuit Court is, with the concurrrence of the other judges, reversed, and the cause remanded.