## NICHOLS, SHEPARD & Co. *vs.* JOHN F. KNOWLES.

### February 9, 1884.

**Warranty Construed—Notice—Waiver.**—A contract of warranty (recited at length in the opinion) of a steam thresher engine construed, and the construction applied to this case.

Plaintiff (a corporation) brought this action in the district court for Ramsey county, upon two promissory notes, given as part of the purchase price of a steam-engine. The defendant pleaded, as a counterclaim, damages for a breach of warranty on the sale. The place of trial was changed to Dakota county, where the action was tried before *McCluer*, J., and a jury, and defendant had a verdict. Plaintiff appeals from an order refusing a new trial.

*Willis & Willard*, for appellant.

*J. N. Searles*, for respondent.

BERRY, J. This is an action upon two notes given for part of the price of a steam thresher engine, sold by plaintiff to defendant, with the following warranty, viz.: "This engine is ordered, purchased, and sold subject to the following express warranty and agreement, viz.: That the said engine is well made and of good materials, and, if

properly run and fired, and rightly managed, is capable of developing the full power at which it is rated by its makers, conditioned that upon starting this engine the undersigned purchasers shall intelligently follow the printed hints, rules, and directions of the manufacturers; and if by so doing they are unable to make it operate well, written notice, stating wherein it fails to satisfy the warranty, is to be immediately given by the undersigned purchasers to the dealer through whom purchased, and also to Nichols, Shepard & Co., at Battle Creek, Michigan, and reasonable time allowed to get to it and remedy the defect, (if any,) unless it is of such a nature that they can advise by letter. If they are not able to make it operate well, (the purchaser rendering necessary and friendly assistance,) and the fault is in the engine, it is to be taken back and the payments refunded, or the defective part remedied and made the same as in their other engines which do perform satisfactorily. But if the purchasers fail to make it perform through improper management, or lack of proper appliances, or neglect to observe the printed or written directions, then the said purchasers are to pay all necessary expenses incurred. Deficiencies in general adaptation for developing the rated power (which alone involve damages or the return of the engine) are expressly agreed by the undersigned to be reported in writing, as above stated, within ten days after starting it, and not after continued use or injury to the engine; and use without such notice is conclusive evidence of satisfaction and fulfilment of warranty. It is expressly understood and agreed that all warranty on this engine terminates and expires, and all liability of Nichols, Shepard & Co., for breach of warranty, damages, or otherwise, ceases entirely at the close of this year. Also, that if any part of said engine (except the belting) fails, during this year, in consequence of any defect in material of said part, (if the purchaser shall have observed the printed or written directions applicable to the management of such part,) Nichols, Shepard & Co. are to furnish a duplicate of said part free of charge, except freight, after presentation of the defective piece, clearly showing a flaw in the material, at the factory, or to the dealer through whom said engine was bought, at any time within this year; but deficiencies in any pieces not to condemn other parts." The warranty bears date June 17, 1879.

So far as the present appeal requires us to consider it, we take the meaning of this obscure, confused, and inconsistent contract to be as follows: It is a warranty (1) that the engine is well made; (2) that it is of good materials; and (3) that if properly run, fired, and managed, it is capable of developing the rated power. This warranty is subject, however, to the condition (among others) that if, upon trial, the engine fails to "operate well," written notice, stating wherein it fails to satisfy the warranty, is to be given immediately (*i. e.* upon ascertaining the fact that it does not operate well) to the dealer through whom the engine was purchased, and also to the plaintiffs at Battle Creek, Michigan,—their place of business. If the failure to operate well arises from "deficiencies in general adaptation for developing the rated power," the written notice is required to be given, as above stated, within 10 days after "starting" the engine; that is to say, 10 days, and no more, are allowed the purchaser in which to find out whether any *such* deficiencies exist. Then comes the limitation clause, the effect of which is not (as contended by plaintiffs' counsel) that no action can be properly brought by defendant on the contract of warranty after the close of the year, (1879,) but that the warranty and the liability of plaintiffs' are limited to such warranted against defects in the engine existing at the time of the sale, and not being "deficiencies in general adaptation for developing the rated power," as may be discovered before the close of 1879, and to such "deficiencies in general adaptation for developing the rated power" as may be discovered within 10 days after the engine is "started." To both the "defects" and the "deficiencies" mentioned, the clause requiring *immediate* notice to be given applies, with the difference that, as respects time of discovery, it is sufficient if the former are discovered at any time during 1879, while as to the latter the discovery must be made, and notice also given, within 10 days from the time of "starting" the engine.

It remains to apply this exposition of the warranty to the case, first premising that there was evidence tending to show that the engine was defective in its materials and in its make, and that it would not develop the rated power. The *notices* are required to be in writing, but of course a formal notice may be altogether waived, and, a

*fortiori,* a requirement that it shall be in writing. In the case at bar no written notice was given to the local agent at all, and none to the plaintiffs until some two months after the defendant started the machine. Seasonable *oral* notice was, however, given to the local agent, and by him acted upon, without objection, as the testimony tends to show. Upon the testimony we are therefore of opinion that, as respects the agent, there was evidence sufficient to authorize the jury to find a waiver of the written notice prescribed in the contract. The object of a written notice would appear to have been accomplished so far as he was concerned.

It is claimed that there was evidence of a like waiver as respects the notice to the plaintiffs. To this we are unable to assent. The evidence upon the subject tends to show that one Hickman was sent out by plaintiffs to "visit" and "see to" and "fix up" engines which they had sold in different parts of this state; that certain persons (Doten and Van Dorn) claimed to have been acting for the defendant, met Hickman while he was in the neighborhood, in plaintiffs' employment, as aforesaid, and informed him of the defects and incapacity of the engine in question, and that thereupon he promised to come and fix the engine in the course of a week. This notice to Hickman appears to have been given within 10 days after the defendant "started" the engine. Hickman, it appears, did not come to see to or "fix" the engine at all. This is, in substance, the evidence upon which the defendant contends that the plaintiffs waived the written notice to which they were entitled by the terms of the contract. In other words, the acceptance of the oral notice by Hickman, by his promise, without objection, to come and fix the machine, is the waiver contended for. In our opinion there is a fatal objection to the defendant's position. There is no evidence whatever tending to show that Hickman was authorized to receive the notice provided for in the contract of warranty, for or in behalf of the plaintiffs, and no evidence whatever tending to show that he had the least authority to waive it; nor that the notice which was given to him was ever accepted or acted upon by plaintiffs, or his action in the premises ratified by them. The notice given to Hickman was, therefore, wholly ineffectual to bind the plaintiffs. And as no notice was given to

plaintiffs until two months after the engine was "started," and for nearly as long a time after the discovery of the defects in material and make complained of, and no legal excuse is shown for the delay, it follows that defendant's counterclaim for breach of warranty cannot, upon the evidence, be sustained, and that plaintiffs, as the case now stands, are entitled to recover the full amount due on the notes in suit.

The views of the trial court, as appearing in instructions to the jury and refusals to instruct, were wholly inconsistent with the views above expressed, and there must, therefore, be a new trial.

This disposes of all the errors assigned by plaintiffs which it seems to be necessary to consider at this time. The alleged errors which are not covered by what we have said relate mainly to matters of fact.

Order reversed, and a new trial directed.